# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEONARD PARKER** | **CIVIL ACTION** |
| **versus** | **NO. 12-1672** |
| **WARDEN LYNN COOPER** | **SECTION: "F" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Leonard Parker, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana. On June 3, 2010, he pleaded guilty under Louisiana law to distribution of cocaine within one thousand feet of a school and was sentenced to a term of twenty-five years imprisonment.[1]

---

[1] State Rec., Vol. I of II, transcript of June 3, 2010; State Rec., Vol. I of II, minute entry dated June 3, 2010.

On February 3, 2011, petitioner filed an application for post-conviction relief with the state district court.[2] That application was denied on March 30, 2011.[3] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on July 5, 2011,[4] and by the Louisiana Supreme Court on April 20, 2012.[5]

On June 21, 2012, petitioner filed the instant federal *habeas corpus* application.[6] The state concedes that the application is timely and that petitioner exhausted his remedies in state court.[7]

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

---

[2] State Rec., Vol. I of II.

[3] State Rec., Vol. I of II, Order and Reasons dated March 30, 2011.

[4] State v. Parker, No. 2011 KW 0710 (La. App. 1st Cir. July 5, 2011); State Rec., Vol. I of II.

[5] State *ex rel.* Parker v. State, 85 So.3d 1261 (La. 2012) (No. 2011-KH-1687); State Rec., Vol. I of II.

[6] Rec. Doc. 3.

[7] Rec. Doc. 11, pp. 3-4.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of

> imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Petitioner's Claims

### A. Petitioner Was Denied a "72-Hour Hearing"

Petitioner claims that he is entitled to relief because he was not accorded a "72- hour hearing" as required by La. Code Crim. P. 230.1. The state district court rejected that claim, holding:

> Regarding his pre-trial release, La. CCrP Art 230.1 provides in pertinent part as follows:
>
> A. The sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel...
>
> C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
>
> **D. The failure of the sheriff or law enforcement officer to comply with the requirements herein**

> **shall have no effect whatsoever upon the validity of
> the proceedings thereafter against the defendant.**
>
> The remedy for a violation of C.Cr.P. art. 230.1 is pre-trial release. But it has no affect [sic] upon the validity of the proceedings thereafter. Therefore, Parker's guilty plea is unaffected by the alleged C.Cr.P. art. 230.1 violation and this claim is without merit.[8]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[9] and by the Louisiana Supreme Court.[10]

Even if there was a violation of La. Code Crim. P. art. 230.1 in this case, which is an issue this Court need not and does not reach, it is of no moment for the purposes of this federal proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983). Therefore, this claim should be rejected.[11]

---

[8] State Rec., Vol. I of II, Order and Reasons dated March 30, 2011, p. 2.

[9] State v. Parker, No. 2011 KW 0710 (La. App. 1st Cir. July 5, 2011); State Rec., Vol. I of II.

[10] State *ex rel.* Parker v. State, 85 So.3d 1261 (La. 2012) (No. 2011-KH-1687); State Rec., Vol. I of II.

[11] The Court notes that petitioner also makes passing references to other matters in his discussion of this claim. It is unclear whether he meant those references to be construed as distinct claims; however, if so, they likewise have no merit for the following reasons.
   First, petitioner claims that he was denied a preliminary examination. That claim is not cognizable in this proceeding because there is no federal constitutional right to a preliminary examination. Harris v. Estelle, 487 F.2d 1293, 1296 (5th Cir. 1974); Wright v. Lensing, 1993 WL 8327, at *2 (E.D. La. Jan. 14, 1993).
   Second, petitioner also argues that the state district court misapplied La. Code Crim. P. article 572 in the post-conviction proceedings and that the bill of information should have been quashed because it was untimely. In the state post-conviction proceedings, the trial judge noted: "[T]here was no untimely prosecution in this case as formal charges were filed within the time

## B. Petitioner's Guilty Plea Was Invalid

Petitioner next claims that his plea was invalid because he was not correctly informed of the elements of the crime to which he was pleading guilty. Specifically, he argues that he was not advised during the colloquy that La. Rev. Stat. Ann. § 40:981.3 requires that signs be posted to identify a "drug free zone." The state district court rejected this claim, holding:

> Defendant was arrested for a drug offense occurring within a drug free zone. He argues that there were no notices of the protected status of the property where the offense allegedly occurred. The bill of information and the photographs attached to petitioner's application clearly identify the property as Bayou Woods Elementary School. RS 40:981.2 [sic] only requires drug free zone posting for drug treatment facilities, religious buildings, public housing authority property, or child day care center property, and not for schools. Therefore, the posting requirement was not required to be read to

---

periods provided in C.Cr.P. art. 572." State Rec., Vol. I of II, Order and Reasons dated March 30, 2011, p. 2. Petitioner appears to dispute that conclusion; however, it is clearly correct. Under article 572, the state was required to institute prosecution within six years of commission of the offense. La. Code Crim. P. art. 572(A)(1). Petitioner's offense was committed on July 11, 2009, and the bill of information was filed on March 26, 2010. Accordingly, there was no violation of article 572.

Out of an abundance of caution, the Court notes that petitioner is perhaps trying to claim that the state failed to comply with the provisions of La. Code Crim. P. art. 701. If that it what he is attempting to argue, his claim fares no better. In pertinent part, article 701 requires that a bill of information for an individual in custody be filed within sixty days of an arrest for a felony. La. Code Crim. P. art. 701(B)(1)(a). Petitioner alleges that he was arrested on August 1, 2009, but the bill of information on this charge was not filed until March 26, 2010. As an initial matter, it appears that petitioner's detention may have been based on an unrelated charge. See Rec. Doc. 3-1, p. 1. However, even if that was not the case, and even if the state failed to comply with article 701(B)(1)(a), petitioner's claim has no merit for two reasons. First, as previously noted, federal *habeas corpus* relief cannot be granted for violations of *state* law. Second, even under state law, the remedy for a violation of article 701 is limited to release of pretrial detention without bail; any violation of article 701 is moot after conviction. See, e.g., State v. Gordon, 896 So.2d 1053, 1062-63 (La. App. 1st Cir. 2004); State v. Odom, 878 So.2d 582, 593 (La. App. 1st Cir. 2004); see also State v. Stewart, 983 So.2d 166, 168 (La. App. 4th Cir. 2008).

Parker at the time of his guilty plea. Parker's claims to the contrary are without merit.[12]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[13] and by the Louisiana Supreme Court.[14]

The United States Supreme Court has held that a guilty plea is not voluntary in a constitutional sense "unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Henderson v. Morgan, 426 U.S. 637, 645 (1976) (internal quotation marks omitted).[15] However, as noted by the

---

[12] State Rec., Vol. I of II, Order and Reasons dated March 30, 2011, pp. 2-3.

[13] State v. Parker, No. 2011 KW 0710 (La. App. 1st Cir. July 5, 2011); State Rec., Vol. I of II.

[14] State *ex rel.* Parker v. State, 85 So.3d 1261 (La. 2012) (No. 2011-KH-1687); State Rec., Vol. I of II.

[15] The Supreme Court nevertheless observed:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

Henderson, 426 U.S. at 647. The Supreme Court further noted: "There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume that it does not." Id. at 647 n.18. Additionally, the United States Fifth Circuit Court of Appeals has held:

> The Henderson Court did not purport ... to lay down an absolute requirement that the technical elements of an offense be recited to a defendant. A plea will be upheld if it is shown by the record, or the evidence adduced at an evidentiary hearing, that a

state court, petitioner was accurately informed of the elements of his offense. In the instant case, the trial court explained the charge as follows during the colloquy:

> BY THE COURT:
> All right. Mr. Parker –
>
> BY MR. PARKER:
> Yes, sir.
>
> BY THE COURT:
> – you are charged, sir, with distribution of a controlled dangerous substance, a Schedule II controlled dangerous substance, specifically cocaine within a thousand feet of property used for school purposes or recreational park area. Those two statutes are Revised Statutes 40:967 A(1) and 40:981.3. Let me read those to you.
> 967 A(1). It shall be unlawful for any person knowingly or intentionally to produce, manufacture, distribute, or dispense or possess with the intent to produce, manufacture, distribute, or – let me back up and read that correctly for you.
> It is unlawful for any person knowingly or intentionally to produce, manufacture, distribute, or dispense, or possess with intent to produce, manufacture, distribute, or dispense a controlled dangerous substance or a controlled substance analog classified as Schedule II, and cocaine is listed as a Schedule II controlled dangerous substance.
> Any person who violates this statute shall be imprisoned with or without hard labor for not more than five years and, in addition, may be sentenced to pay a fine of not more than $5,000.
> In addition, Mr. Parker, by having been charged with distribution within a thousand feet, that ramps up or enhances the penalty. Let me read that for you.
> 981.3. Any person who violates a provision of the Uniform Controlled Dangerous Substance Law, which includes the law I just

---

defendant understood the charge and its consequences when he pled guilty.

DeVille v. Whitley, 21 F.3d 654, 657 (5th Cir. 1994).

> read to you, 967 A(1), while on any property used for school purposes by any school or within 1000 feet of any such property, shall be punished according to Subsection E which provides whoever violates this provision shall be punished by the imposition of the maximum fine and imprisoned for not more than one and a half times the longest term of imprisonment authorized by the applicable provisions of 966 through 970.
>
> So what you've got to look at is one and half times the penalty, and I read the wrong penalty to you. Let me go back and fix that under 967. I read to you the possession penalty, but the actual penalty, sir, under 967 for distribution of cocaine is imprisonment at hard labor for not less than two years at hard labor nor more than 30 years with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence.
>
> All right. So the enhanced penalty under 981.3 is one and a half times the longest term of imprisonment, so it's not more than 45 years rather than 30 years, okay, so the sentence goes from two to 30 to two to 45 years, two of which will be without parole, probation, or suspension of sentence, and the maximum fine of $50,000.
>
> So the way I read the penalty – the penalty range, Mr. Parker, is shall be punished by imposition of a maximum fine, which is $50,000, and imprisoned for not more than one and a half times the longest term of imprisonment. So that means that the maximum period of time that you could be sentenced would be 45 years without benefit of parole, probation, or suspension of sentence.
>
> Do you understand the elements of the crime you're charged with, sir, and the sentencing range for that crime?
>
> BY MR. PARKER:
> Yes, sir.[16]

Petitioner argues that the judge misstated the law by failing to inform him that the law required a posted notice for a "drug free zone." However, petitioner's underlying premise is incorrect – the criminal provision he violated does not require a posted notice for a "property used for school purposes by any school." La. Rev. Stat. Ann. § 40:981.3(A)(1). As noted by the state

---

[16] State Rec., Vol. I of II, transcript of June 3, 2010, pp. 10-12.

– 10 –

court in rejecting petitioner's post-conviction claim, the law requires a posted notice only if the "drug free zone" in question is a drug treatment facility, a religious building, public housing authority property, or a child day care center property. La. Rev. Stat. Ann. § 40:981.3(A)(2)-(3). Because petitioner was charged with distribution of cocaine within one thousand feet of a *school*, specifically the Bayou Woods Elementary School,[17] no posted notice was required for § 40:981.3(A)(1) to apply, and, therefore, the trial judge did not err when advising petitioner of the elements of the crime.[18]

Accordingly, the Court finds that petitioner has failed to demonstrate that the state court's decision denying his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, applying the AEDPA's deferential standard, this Court should likewise reject the claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Leonard Parker** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[17] State Rec., Vol. I of II, Bill of Information.

[18] Further, as noted by the state court, a sign clearly identified the building at issue as a school. Moreover, even if petitioner had failed to notice that sign, it would be of no moment, because lack of knowledge that the prohibited act occurred within a school zone was not a defense under state law. La.Rev.Stat.Ann. § 40:981.3(B).

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this twenty-eighth day of September, 2012.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**

---

[19] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.